**Hurley KELLY, Libelant,**

v.

**THREE BAYS CORPORATION, Ltd., Respondent.**

United States District Court
S. D. New York.
June 9, 1959.

**836**

Kenneth Heller, New York City, for libelant.

Kirlin, Campbell & Keating, New York City, for respondent. Daniel J. Dougherty, James P. McGarry, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This is a motion to vacate service of process and dismiss the libel for want of jurisdiction of the person, pursuant to Rule 12(b) (2), F.R.Civ.P., 28 U.S.C.A., upon the ground that respondent is a foreign corporation not subject to service of process in this district, and that service was not made on a person authorized to be served on its behalf.

The motion was originally presented on affidavits only. I withheld decision pending the taking of depositions by libelant bearing on the relationship between respondent and its alleged agent Dichman, Wright & Pugh, Inc. upon whom service of process was made and upon whose activities in New York on respondent's behalf respondent's "presence" here depends. See Memorandum Adm. No. 190–391, December 27, 1957.

Libelant has now completed rather exhaustive depositions on this subject and asks that its motion be decided upon such depositions and various affidavits which are before the court.

Libelant is a citizen and resident of Honduras. He sues in admiralty for personal injuries allegedly sustained in the Caribbean aboard a Panamanian flag vessel owned and operated by respondent on a voyage between Caribbean ports. Libelant was sailing under Panamanian Articles signed in Honduras.

Three Bays is a corporation organized in the Bahamas and its main office and general and operating agent is located at Miami, Florida, with branch offices at Tampa and Pensacola.

There can be no doubt that the claim here did not arise out of, nor had it any connection with respondent's activities in New York, whatever those activities were.

To determine whether respondent was "present" in this jurisdiction for purposes of service of process the question is whether respondent had "minimum contacts" with the state of the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'". Whether the claim asserted has any connection with the activities carried on in the state of the forum is relevant on this question. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139. See, also, French v. Gibbs Corp., 2 Cir., 189 F.2d 787; Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184, certiorari denied 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531; Kilpatrick v. Texas & P. Ry. Co., 2 Cir., 166 F.2d 788, certi-

orari denied 335 U.S. 814, 69 S.Ct. 32, 93 L.Ed. 369.

■ Libelant has the burden of sustaining in personam jurisdiction. Mitchell v. The M V Wanderer, D.C.S.D. N.Y., 127 F.Supp. 540; Amtorg Trading Corp. v. Standard Oil Company of California, D.C.S.D.N.Y., 47 F.Supp. 466.

Libelant has not met this burden.

The following additional facts appear from the affidavits submitted and the depositions taken.

Three Bays Corporation operates a cargo cruiser service between Florida and Caribbean ports and its ships do not come into the Port of New York. In addition to its main office and its general and operating agent at Miami and its branch offices at Tampa and Pensacola, respondent's sailing schedules list some fifty agents in Caribbean and other ports and in Baltimore, New York, Norfolk and Philadelphia.

In New York its agent is Dichman, Wright & Pugh at 44 Whitehall Street, which also is agent for Three Bays in Baltimore, Norfolk and Philadelphia. The Dichman firm is an entirely separate corporate entity from Three Bays and there is no interlocking stock ownership or identity of any officers or directors between the two. Service here was made upon Smith, the Manager of Dichman, Wright & Pugh at its New York office. He was the Dichman employee who handled such Three Bays business as was done in New York.

Dichman, Wright & Pugh were engaged as agents in the solicitation of cargo business for a substantial number of ocean carriers, including one of respondent's competitors. The business done here for Three Bays constituted a very small fraction, both of Dichman's business and of the total business of Three Bays, though it was carried on at fairly regular intervals.

All offers of cargo bookings were accepted and contracts entered into at the Three Bays office in Miami, Florida, and were subject to confirmation there. Bills of lading were prepared and issued by the general agents in Miami and never by the Dichman firm. Cargo solicited was not shipped from New York. Dichman did not act as husbanding agent for Three Bays in New York and had no authority to enter into contracts on its behalf. Three Bays distributed its own sailing schedules but they could be obtained from Dichman on request.

Three Bays has no bank account in New York, though it had one in 1953 prior to the accident which was opened merely to facilitate a single transaction. Except for isolated instances of checks made out in error, checks are sent either directly to the respondent's main office in Miami, or forwarded there by Dichman when they were received in New York.

The building directory at 44 Whitehall Street, where the Dichman firm is located, lists Three Bays and other ocean carriers who are its clients at the premises occupied by Dichman. An advertising or directory listing also appears near the elevator on the eighth floor of the building stating that Dichman is the representative of Three Bays and other listed carriers. The Manhattan telephone directory lists "Three Bays Line" at the address and telephone number of Dichman, and the classified directory carries "Three Bays Line, Caribbean Cargo Cruisers, Dichman, Wright & Pugh, 44 Whitehall". All these arrangements are made by Dichman without cost to respondent and are similar to those made for other carriers for whom it acts.

An advertisement regularly carried in the Journal of Commerce which lists Dichman as the New York "representative" of Three Bays Line is arranged and paid for directly by respondent from its main Miami office.

■ The listings referred to, on which libelant heavily relies, are merely some indicia of a corporation's presence or activity within the jurisdiction. They do not in themselves make the corporation "present" here but must be viewed in the light of all the circumstances. See Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 175 F.2d 900; Wieder-

horn v. Sands, Inc., D.C.S.D.N.Y., 142 F.Supp. 448.

It is well settled that mere solicitation of cargo or freight business by an agent in a foreign jurisdiction does not render a corporation amenable to process in that jurisdiction. Green v. Chicago, Burlington and Quincy Railway Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; People's Tobacco Co., Ltd. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Mitchell v. The M V Wanderer, supra; Smith v. Louisville & N. R. Co., D.C.S.D.N.Y., 90 F.Supp. 189. Cf. MacInnes v. Fontainebleau Hotel Corp., 2 Cir., 257 F.2d 832; Wiederhorn v. Sands, Inc., supra. That is all libelant has shown.

Respondent urges that Dichman performs additional services for Three Bays which go sufficiently beyond mere solicitation to make respondent present here. The libelant characterizes these activities as in the nature of "favors" done by Dichman for its principal, and this is just what they are. None of them are continuous or systematic and they occur only sporadically and infrequently. They are merely casual and normal incidents of the business carried on by Dichman as soliciting agents for a large number of clients.

For example, on one or two occasions Three Bays has shipped freight from Miami to New York for transshipment to Europe as a convenience to Caribbean shippers. Dichman picked up this freight in New York and made arrangements for transshipment. This was a gratuitous service.

On infrequent occasions Three Bays has forwarded Venezuelan consular documents obtained by it in Miami to New York and Dichman has delivered them to shippers who have purchased cargo space to Venezuela, collected the relatively small sums which were due for the documents, and forwarded these sums to Three Bays in Miami. Occasionally Dichman has obtained documents and manifests from foreign consulates in New York which it forwards to Three Bays in Miami and is reimbursed therefor.

Such activities are neither continuous nor systematic. They are inconsequential and do not change the position of Dichman from a firm carrying on a large agency business for a number of carriers and merely soliciting for Three Bays as one of its numerous clients to a general agent for Three Bays in New York, or make Three Bays present in New York for purposes of jurisdiction.

Mitchell v. The M V Wanderer, supra, is analogous. Injuries were sustained in Galveston, Texas, aboard an English vessel. Service was made upon a soliciting agent in New York of the foreign corporate respondent. Cargo was booked through respondent's New Orleans general agent, and orders taken in New York were subject to approval there. Respondent's vessels did not come into New York at all. It was held that there was insufficient activity in this jurisdiction to render respondent amenable to process here, the court emphasizing that respondents' vessels never came to this port, and that the liability arose in Texas from activities completely unconnected with solicitation of business here. See, also, Andrade v. American Mail Lines, D.C.D.R.I., 71 F.Supp. 201; Jenkins v. Lykes Bros. S.S. Co., D.C.E.D.Pa., 48 F.Supp. 848; Marcum v. Owens-Parks Lumber Co., D.C. W.D.Wash., 31 F.Supp. 748.

Monteiro v. Sociedad Mar San Nicolas, S.A., 2 Cir., 254 F.2d 514, and Arpad Szabo v. Smedvig Tankrederi, A.S., D.C. S.D.N.Y., 95 F.Supp. 519, on which libelant relies, are not in point. In the former case the agent's responsibilities were much broader than in the case at bar and respondent's vessels called at the Port of New York. In the latter case, as the court said, the activities of the agent were such as to leave respondent little to do except receive the net proceeds of the charter hire.

While it is true that there has been a lessening of "the contracts necessary to fulfil due process" as a result of the International Shoe case, supra, and the cas-

es following it,[1] the trend does not appear to have gone so far as to persuade me that the libelant has shown jurisdiction here. To so hold would make a carrier which, like the respondent, has numerous agents in various ports of the world merely for the solicitation of business, subject to suit in any jurisdiction where it had such an agent, regardless of the limited nature of the agent's activities, the amount of business which the agent procured, or the place where the transaction in suit took place. Such a holding would impose great hardship upon such a respondent and would "offend 'traditional notions of fair play and substantial justice'." International Shoe Co. v. State of Washington, supra [326 U.S. 310, 66 S.Ct. 158].

Respondent's motion to quash service and dismiss the libel for want of jurisdiction is granted.

Settle order on notice.

1. Doing Business As a Test of Venue and Jurisdiction Over Foreign Corporations in the Federal Courts, 56 Col. Law Rev. 394, 405, 1956.